Good morning, Judge Reinhardt, members of the panel. I'm Robert Weigel. I practice law in Ocean Springs, Mississippi. I'm here today for Forest Guardians. This appeals about a grazing allotment on the Apache-Sitgreaves National Forest down in southeastern Arizona, what they call the A-Bar-S in Arizona. It's the Water Canyon tabletop allotment, and depending on which reference in the record you look at, it covers around 13,000 acres, which would be close to 10 square miles out there. It's rugged country. It's dry country. It's a hard place for a cow to make a living. It's a hard place for a fish to make a living. It's a hard place for an endangered owl to make a living, which is probably why we're here today for this appeal. In particular, we're talking about the Little Colorado Spined Ace and the Mexican Spotted Owl, which share that particular allotment with a herd of less than 100 cows is what's run on there. I should start out by saying there's no controversy here in this appeal that grazing on that allotment may affect those two species, the Spined Ace and the Spotted Owl, under the terms of the Endangered Species Act. I know this panel has had Endangered Species Act cases before. I'm not going to spend a lot of time on that process. But under the Endangered Species Act and the implementing regulations, if an action agency like the Forest Service has an activity that's going to may affect an endangered species, they go into the consultation process. Now, this appeal is not about the formal consultation process. It's about a different, less litigated part of that act, the informal consultation process. Which has occurred, is that right, Mr. Weigel? Well, Judge, are you talking about after this appeal was filed? Yeah. That's right. So then obviously that raises the potential question of whether or not we should just dismiss it. We've got two questions, I think, that are up in this appeal. The first is, did the Forest Service, at the time the case was tried and at the time that the appeal was filed, did the Forest Service have a valid Endangered Species Act consultation on this allotment? And then the second question raised by the Forest Service is whether the appeal is moot, because the Forest Service re-initiated or went back into the consultation process after the appeal was filed. Now, with the panel's permission, I'd like to address the merits, and I would like to keep about five minutes for a cuddle. I've got some real concerns on the jurisdictional issues. So before you get to the merits, I really want to know, I'm certainly familiar with the exceptions to mootness if we were to find that the government acted in bad ways and so on. But I'm also mindful of the fact, if I read the record correctly, that there were a number of allotments that were at issue initially, and that this is the only allotment out of however many there were that is before us on this appeal. And you got the relief that you were asking for. Now, whether the government engaged in bad faith or not, we can talk about. But if we find that we still have jurisdiction to hear the appeal, what is it that you now want us to do by way of ---- Let me address. And I think it does get us into the merits a little bit, talking about why this is moot. But that's my question. Right. And I understand that's a real concern here. I think it's important to go to ---- let me address just a little bit of the merits, because I think it frames that mootness question when we do that. The original controversy here, down in the Forest Service Region 2, they had a whole bunch of grazing allotments that needed Endangered Species Act consultation. The endangered species are thick on the ground down there. There are a bunch of them. There are about 1,000 grazing allotments. So the Forest Service and the Fish and Wildlife Service came up with a thing called the Guidance Criteria, under which the Forest Service was allowed, if they made certain factual findings, to be able to make a decision. To presume, in effect, or get an advance concurrence from the Fish and Wildlife Service under the regulations. And that concurrence would stay in effect for the 10-year term of those grazing permits if there was annual confirmation that all of those factual conditions stayed there. And one of the key conditions there was that monitoring of utilization, which means going out there and finding out how much forage, the cattle and so on, used out there. And Judge Paez, you probably remember from the Forest Guardians v. Forest Service case, you can get utilization from cattle. You can also get it from wildlife. They work together. The original controversy here was whether the Forest Service had adequately performed that monitoring so that they actually knew whether that factual condition remained in place out there. And I think the key point for the mootness question, as well as for the merits, is that this concurrence remains in place for 10 years. You still have allotments that are out there that are under this regime. And the annual confirmation that monitoring is taking place and the monitoring itself has to occur. So on a year-to-year basis, you can have this situation that was at play here replicated. Yes, Judge Reinhart. Is there a continuing dispute over the requirement, whether the Fish and Wildlife Service has to perform the monitoring each year? I think there is a continuing dispute, Judge. And I think that what distinguishes this case from cases like the Southern Utah Wilderness Alliance case, from the Tenth Circuit, or from other cases, is you don't have a situation here in which the Forest Service is in apostate and is coming back and saying, I've sinned, I'm not going to sin again. They still believe that it's okay to just drop the monitoring or do very limited monitoring, and that is going to satisfy the conditions under which the Fish and Wildlife Service concurred with their not-likely-to-adversely-effect finding. But to answer Judge Reinhart's question, the only thing we know for sure is that an informal consultation was reinitiated. And whatever the monitoring had been historically on Water Canyon, which, as I understand it, the district court expressed some concerns about whether the Forest Service had met its monitoring obligations as they promised to do, the Fish and Wildlife Service still reached the same conclusion, that there's no adverse impact here sufficient to trigger more. So to re-ask the question I asked and Judge Reinhart, I think, refined, what is it that you want us to do? Do you want some sort of a declaratory judgment that says, shame on you, Forest Service, we really mean it. If you're going to promise to do this, you really have to do it? I think there is still place for a declaratory judgment here that when they do not do the monitoring that they committed to do in getting a concurrence from the Fish and Wildlife Service. And, Judge, I think it's important here that the Fish and Wildlife Service here did not say, okay, initially, look at everything and say, we're going to give you a written concurrence in this. They said, if you, the Forest Service, go find these conditions yourself, are in place. You just can go and run with the ball here. So are you, in effect, asking the district court to assume continuing jurisdiction for purposes of supervising the Forest Service to make sure that they continue to meet their obligations in the future? No, Judge. I think that for purposes of mootness, what we're talking about is a situation where the judge had a situation before him in which the concurrence was based. And it's true that the day before their brief was filed in this court, and I'm not, you know, casting aspersions here on Mr. Shelton, who I know well, but the day before the brief was filed in this court, they did go and request a re-initiation of consultation. Now, that re-initiation, though, was not based on any idea that what they had been doing previously and can continue to do or could return to with this allotment or other allotments is wrong. It was rather based on the claim that, well, we have a couple of new species that have shown up out here, although. Okay, but that goes to the good faith question, and I'm still wrestling with the remedy here. I'm trying to figure out what it is that you want us to direct the district court to do that is not moot because it's either already, I shouldn't use the term water under the bridge when we're dealing with arid cattle land. But, I mean, the past defalcations by the Forest Service are history. The Fish and Wildlife Service, which is charged with the obligation to assess the impact on the species, has rendered yet another determination based on the re-initiated informal consultation that there's still no sufficient adverse impact on the species. So what is it that you want us to do? I think that the district court can still enter a declaratory judgment that the situation that it had for it was a violation of the Endangered Species Act because the Forest Service. Practically, this is what I understand. Your position is that when they don't perform these tests each year, that if they haven't done those particular checks, that then there has to be a reconsultation. The district court said that they didn't have to do the checks because it was enough, although he was unhappy that they didn't do the checks. He said that the fact is that there are other things, such as the number of cows who are grazing is smaller than they expected there would be, and that's enough so that they can they won't be forced to reconsult, even though they didn't do the test. That's why you appealed, as I understand it. That's correct, Judge. So this question comes up every year if the forest, if the fish and wildlife is not going to do the checks every year. If they do them every year, there's no problem. The district court said they won't have to reconsult even if they don't do them. Is there anything that suggests that they won't do them every year? Judge, we have had a very widespread pattern. And in the record, this case, as Judge Tallman noted, originally involved quite a number of allotments, some of which consultation was voluntarily reinitiated on, some of which the judge ordered consultation on, and some of which, during the course of the litigation, additional documentation of monitoring was produced. So there were quite a lot of allotments that showed that this kind of thing. The ones in which the judge ordered consultation, was it because they failed to conduct the necessary inspections? It was for a combination of reasons, Judge, that either improvements that were intended to help reduce impacts on species and a lack of adequate monitoring were theirs, I recall. So we had both of those situations there. Well, I guess the likely to recur and whether there's really a continuing controversy both depend on, I understand that the Forest Service takes a position that even though the verifications or the tests haven't been conducted, they don't have an obligation to consult. That would seem to show that there's a continuing dispute over when they have to consult. My appreciation is that the Forest Service still takes that position. The question is, what does Fish and Wildlife say about whether they're going to perform all those tests that are called for each year? I'm sorry, Judge. It's Fish and Wildlife that's supposed to do the checking, right? It's actually the Forest Service that's supposed to do the checking, Judge. And that's the point is that the Fish and Wildlife Service simply said to the Forest Service, look, if you the The Forest Service conducts the tests. Yes, sir. All right. And then Fish and Wildlife presumably looks at the results of those tests in rendering the informal consultation letter opinion, right? Judge, that is, now, if you're talking about the one that occurred after this appeal was filed, I don't know what was in the record that they looked at on that, but under the process that was used initially here, the Fish and Wildlife Service doesn't look at anything. They're the ones who initiated the request for reconsultation. I beg your pardon? Forest Guardians initiated the request for consultation. If by that, Judge Pai, as you mean, did this appeal kick that off? No. You're challenging the Fish and Wildlife Service's failure to reinitiate consultation. That, I think That's what you were saying a minute ago, that they don't monitor, they don't examine the monitoring that the Forest Service undertakes. Judge, no. We are not challenging the Fish and Wildlife Service's failure. The defendant in this case is the Forest Service, and as the action agency under the Endangered Species Act, it's their obligation, in fact, to ensure that their actions are in compliance with the Endangered Species Act, that they go through the consultation process, and so on. Doesn't Fish and Wildlife need to know the results of the monitoring in order to render an informed opinion as to whether there's an adverse impact or not? I believe they would, but, Judge, I think the point I'm trying to make is in the process that was initially utilized in this case, the Forest Service and the Fish and Wildlife Service said, here are a set of four or five factual criteria. One of those, one criterion was you're going to have utilization standards in place, they're going to be monitored, there's going to be annual confirmation. Fish and Wildlife Service said, if you find that those are in place, we concur up front, you don't have to come back and get a written concurrence from us. And that, I think, is what's different about this case from any other situation that I've seen or seen litigated, that this was in the... But what prompted the lawsuit, though, was after several years, or I guess after each year, when you looked at the reports, the Forest Service didn't conduct that utilization review. They did not. And you, as a citizen litigant, said you should have initiated, re-initiated consultation with the Fish and Wildlife Service. You're correct, Judge Pius. That is how it works. Although I think in this, because of the unusual posture here, there are two ways to look at it. One is the Fish and Wildlife Service said, our concurrence, and you're not likely to adversely affect finding, remains in place as long as you do this. And once you didn't do that, then that concurrence was gone and there was no consultation. Or alternatively, under the 50 CFR 402.16, you re-initiate. But, judges, I'm down to three minutes and 15 seconds. May I reserve the rest for rebuttal, if there are no other questions? Thank you, Judge. May it please the Court. I am David Shilton, representing the U.S. Forest Service. The claim that's made in this appeal is that with respect to this Water Canyon allotment, that the Forest Service is allegedly in violation of a regulation, it's 50 CFR 402.16, that requires that an agency re-institute consultation with the Fish and Wildlife Service where there is new information revealing unanticipated effects on species or where the agency action has been modified in a manner that causes an effect on the species that wasn't previously considered. So what does that consist of? What is it that the Fish and Wildlife Service does when such consultation, formal or informal, I guess informal in this case, occurs? Well, the re-initiated consultation, the one that took place during this appeal, it simply, it sends, it does what it calls a biological assessment, which looks at the condition of the area. In this case, it looked at the Mexican spotted owl for which critical habitat had been designated, looks at all those figures, and it sends it to the Fish and Wildlife Service and asks, basically, do you still concur in our finding that there's no likelihood of an adverse effect on these species? And then Fish and Wildlife Service writes back, if they concur, then that's the end of it. If they don't, then you have to go into formal consultation. And I assume in the process that they review the basis on which the Forest Service biologists, the wildlife biologists, made that determination, which would be whatever data is available to show impact. Right. They do. The biological assessment contains the data. There's a report in there about what monitoring was done here. The report talks about the fact that some pastures weren't monitored. Your position is that this consultation that you initiated was not because of the complaints that they made. It's not because they said you hadn't complied by taking the necessary tests. You did it based on new information. There are several reasons for it, Your Honor. They needed to reinitiate consultation because of the designation of critical habitat. That's required by the regulation specifically, says that if a new species is listed or critical. That's one reason. That's one reason. As long as they were doing it, the plaintiffs had raised, in good faith, some important issues. As has been noted, the district court, this was the one. They wouldn't have done it simply because of the issues the plaintiffs raised. You know, I. I thought that's what your brief said. Yeah. No, I think there were several reasons. I think it probably would not have been done if they hadn't been already doing it for the Mexican spotted owl. So still your position that the plaintiff's statements that you failed to conduct those tests is not a sufficient reason for a re-consultation. That's right. Now, that is our position, although I want to make it clear that we're not taking the position that the Forest Service does not have to monitor. We recognize that there is a need to monitor forage utilization each year, and the district court specifically found that monitoring did go on each year. I would just refer. But not as required by the agreement. Some monitoring, but not all that was required by the whatever, the forest, the Fish and Wildlife's original report. Well, that's what the dispute's over. I mean, we take the position that the monitoring which took place was adequate under those criteria. But that dispute is likely to continue each remaining year. Well, I don't think so, because. Why not? That dispute is not really the question on appeal. The question on appeal is whether the trigger for the re-consultation has been met. So that. And they say that you need more tests than you took to in order to avoid the trigger. And you say that if you take make a smaller number of tests, that's enough. Essentially, they say you didn't do as many tests as the criteria required. That's A. Part B, that means that there's been a sufficient modification in the action to require re-initiation. We say as to Part A, we think we did meet the criteria because we did monitor. And as to Part B, we say even if we didn't, that's you can't just show this one difference from the criteria. You have to show something that has some sort of effect. It hasn't been resolved yet because this comes up every year. As long as you're going to continue to test the way you've been testing, they're going to have the same dispute with you. Well, I'm not sure that's the case, Your Honor, because, after all, there were nine allotments where these issues arose in the district court. And the district court found, with regards to eight of them, that we didn't need to I'm sorry, with regard to all nine, that we didn't need to re-initiate. Well, I may have the numbers wrong, but quite a handful that we didn't need to re-initiate consultation. They only appealed on one. And the others, they've let go. So I think that indicates that there's not always a controversy over monitoring on these allotments. And this particular controversy on Water Canyon allotment is a highly factual one, depends on the particulars of monitoring each year. And if what they are asking for, the only thing they ask for in their opening brief is re-initiation of consultation. If that's been done, I don't know what kind of effective relief. How would they go about challenging the, I'll call it the monitoring plan? Is there a separate way for them to do that? Is it too late for them to challenge the particular components of the plan as inadequate? The, when the Forest Service grants one of these 10-year leases, there is a final agency action at that point, and that includes the, there's a chosen alternative, which includes what monitoring they're going to do. So they can challenge that at that point under ESA, under NEPA, whatever. So there is that option. The dispute, if there is one, is that the Forest Service hasn't lived up to its promises in the plan. You say we have. They say, no, you haven't. The district court looked at it and concluded that whatever was done was adequate. And then they took an appeal as to this allotment only, right? That's correct. The procedural history? That's correct. And their request is that if you were to reverse and send it back to the district court, that the district court would then require re-initiation of consultation. But we've already done that. Now they're saying, no, we're really talking about the mootness that Judge Talman raised initially. I agree with you. There's no point ordering re-consultation on that. It's been done. The question is, normally if you get a mootness, the government's taken an action, the problem's over, that's it. Here you've got a 10-year contract. And if there is really a dispute about how much monitoring has to be done, it hasn't been resolved. And the question is, why should it be moot if it's likely to come up every year? Is it how much monitoring or how often they're doing it? In other words, not complying with what they promised to monitor. Well, when I say how much, I mean is it enough in terms of what the plan requires? Are they conforming to the plan? Does the monitoring conform to the plan? You say it complies enough with the plan so that you don't have to re-initiate. Right. They say, no, that's not good enough to meet the plan. You have to re-initiate. Isn't that the dispute? That is the dispute. You haven't resolved that dispute yet. Well, I think that the re-initiated consultation, which found that on this record of monitoring, and the Fish and Wildlife Service was able to look at monitoring up through 2004, so even beyond what the district court looked at here, it said there's no problem in terms of any effects on endangered species. And that's what this is really about. I don't really know what went on in the new consultation. Well, they could challenge that. They could challenge that. But as far as we're concerned, we don't know what they did in that re-consultation. It seems to me, and I may be wrong, this is why I'm trying to explore this with you, that I don't see any reason not to think the same dispute is going to continue. If you came in here and said, look, we went back to re-consultation because we agree there should have been more monitoring, and that's why we did it, then it would seem to me there would be no dispute left for the future. But I don't see how the underlying dispute has been changed by the fact that, for other reasons, you agreed to go back to re-consultation. Because we've resolved this central issue of whether the action has been modified to an extent not originally considered in the original consultation. And to have a cause of action here, they have to show a violation of the statute or regulation. This is an Endangered Species Act citizen suit. And those are the two kinds of things that you show in that. When you say it's been modified, do you mean that the requirements set forth as to what's to be done to avoid re-consultation, that those requirements have been modified? No, it's whether the project itself, that there's been a change in the project to such an extent that it casts the whole issue of effect on endangered species into a new light. Where did that change occur? Well, that's what they are alleging, that there was a change. We're saying nothing has changed. I thought they weren't alleging a change at all. I thought they were just alleging that every year you're supposed to do a certain number of tests to show what the conditions are. Well, they're saying that, in their view, the monitoring we've done is not adequate and that that essentially undercuts the original decision by Fish and Wildlife Service that this was okay, that the original approval was based on certain assumptions. And they say that those assumptions are not good anymore. We say everything we've done is consistent with those assumptions. But now that we've re-initiated consultation. Well, as I understand their argument, they say, okay, here are the certain set of assumptions. The Forest Service made these factual determinations which support the assumptions, the guidelines, one of which is that we will do this monitoring. And, therefore, the Fish and Wildlife Service says, okay, we'll sign off. But then, when it turns out that you don't do it, you would think that the same assumption, just the opposite would apply, which is that if you don't meet that test, then it should be assumed, because you're in this world of kind of fiction, that it would have a significant change and have an effect on the species sufficient to qualify under 402.16d. And I thought that's what their position was. Right. Right. And they're saying that. How about these assumptions that are in play underneath? Right. And they're saying that because, in their view, we were acting in this different world that's different from the assumptions, you need to go back to the Fish and Wildlife Service and have them look at it. How did the species get the benefit? Well, under the Endangered Species Act, generally the species do get the benefit of the doubt. But in this case. If it's going to work in this world of assumptions, why does it work both ways? Well, the, you know, I think the fact that the way that it's guaranteed that the species does get the benefit is to have a neutral agency like Fish and Wildlife Service out there to check on things. Fish and Wildlife Service, as you just explained to Judge Tallman a few minutes ago, the Fish and Wildlife Service doesn't, you know, look at these reports on a regular basis. No. That's right. They're not on top of the scene. But they did this time. They did. They were confused on the mootness issue because they did it. The Fish and Wildlife Service, they re-initiated, they looked at it. Right. And they said it doesn't change our decision that this, that there's no adverse. Precisely. That's exactly right. And if this controversy arises again, I mean, it would be a new case. They just file a new citizen suit under the Endangered Species Act. That's right. So if we dismiss this appeal as moot and there's a problem with next year's allotment or the 2005 allotment result, there's nothing that prevents them from filing another suit to challenge whatever the dispute is over the 2005 monitor. That's absolutely true. But I think what you're getting at is that why not resolve it here. Well, I'm still trying to find out what it is that we're supposed to resolve here. Nobody's convinced me yet that there's any controversy that remains over the Water Canyon allotment based on what was before the district court in light of the re-initiated consultation. Yeah. No, I agree there's no remaining controversy on that. I thought you told me that you agreed that their position was that each year you have to conduct a certain number of tests. And your position was we know we don't have to. We can comply without doing that. I thought that was the controversy from the beginning, and it's still a controversy. Well, under the 1998 guidance, which sets forth the monitoring requirement, what it says is that there need to be utilization standards, that's a percentage standard of how much the cows get, and they need to be monitored. Doesn't it say this will be monitoring at certain times in the middle of the thing, at the end of it? That's from the biological assessment that the Forest Service did after those criteria were done. The Forest Service did this biological assessment, and it set out in somewhat more detail what its plans were as far as monitoring. And that's where you have, I think, the sentences that are in the main center of the dispute, because it talks about doing monitoring in mid-season monitoring. Mid-season monitoring was not done for every pasture, as the district court recognized. But without the details, isn't the dispute over what constitutes adequate monitoring? Well, again, I think the dispute is whether the trigger for the reinitiation of consultation was met. And as the district court found, just because there's a glitch in monitoring and some deficiency, that's not the only question. You've got to look at the whole picture, the whole reason why the Fish and Wildlife Service originally thought it was okay to have grazing and that that wouldn't adversely affect species. And that was based on the fact that the Forest Service would require fencing of riparian areas to keep the cows out of the stream. It reduced significantly the number of cows that are going to be allowed. All of those things went into that original finding. And so the mere fact that midpoint monitoring might not have been done every year on every pasture that was used, that that sort of thing in itself doesn't trigger the reinitiation. That's the merits of the dispute. I understand your position on the merits, that just because you don't do a certain amount of monitoring doesn't trigger it. That's the merits. And they say, yes, if you don't do that monitoring, it does trigger it. And that dispute's not resolved. But if we're wrong, the only relief available is to order reinitiation of consultation, and that's been done. So our point is that this year. But if you say each year we can do X amount of monitoring and it's not triggered, and they say if you do X amount of monitoring it is triggered, that dispute's not resolved. Well, it may come up again, but I do think it's a new case. Well, they can have a new case every year, and then three years later, by the time they get here, then it can be dropped because you can go back and talk to the Forest Service, and then they have to that's the end of that three-year period. Meanwhile, they haven't established what constitutes adequate monitoring. Well, I don't think it evades review in that sense, because there is time to get review. But I think this Court's case is on mootness in the Endangered Species Act context, which would be the American Rivers case that we cite in our brief, and also the previous Forest Guardians versus Forest Service case, indicate that where a biological assessment is superseded by a new consultation, that generally that new consultation does moot any controversies about the old consultation. And so under those cases, under the Southern Utah Wilderness Association versus Smith case, which is from the Tenth Circuit, we think those cases show that on these very highly fact-intensive disputes, that once there is a new consultation, that the focus that the old disputes are gone. So I see my time is up. Thank you very much. Thank you. Judge Tallman, I want to make sure that I address your concerns, because I have the sense I'm still going uphill with a heavy load there. Only because I can't figure out what it is that we're supposed to do with this case, other than to tell the district court, you better keep a sharp eye on the Forest Service and make sure that they do what they've promised to do in these biological assessments. Well, Judge, we did request declaratory judgment that the actions were illegal at the trial level, and I think that can still be entered. There's a point that I think I hope I can make clear here. The Endangered Species Act has both substantive and procedural provisions, and the substantive ones say don't endanger and don't take and don't do these various other things to endangered species. The procedural ones are really the ones that are in controversy here, and they are equally enforceable and equally a matter of dispute that can be resolved through a citizen suit with the substantive ones. The procedural consultation process itself, if you look at this court's decision in Thomas v. Peterson, which is cited in our brief, tells you strict compliance with the procedural provisions is imperative because you can't make sure the substantive provisions are going to be honored if you don't have that. Now, you can have Isn't the remedy for the violation, if we find that there was a procedural breach, the remedy is to order a reinitiation or a new consultation, which occurred. And I believe you can also have a declaratory judgment that the failure to reinitiate in the situation that's been alleged and we believe proven in this case was a violation of the procedural duty to have a valid consultation under the ESA. You're saying the district court's legal conclusion that the mere failure to monitor and strict compliance with the plan in and of itself is not sufficient to require reconsultation was an error of law. That is true. And that we should reverse that determination, remand it to the district court so that it guides it in the future? And you still have Presented with another situation that should immediately order reconsultation? You do have, I think, a live controversy over whether that failure to take the actions on which an informal consultation was absolutely clearly based requires that reinitiation of consultation. I thought your relief that you want is declaratory relief not to help guide the district court particularly, but to tell the foresters. Well, it certainly is, because that's who we have the ongoing controversy with about whether this is the case. I grew up with a declaratory judgment that says that the failure to conduct the adequate consultation triggers the obligation to reconsult and that failing to perform a certain quantity is a violation. And it means that that informal consultation is no longer valid and you've got to get a valid consultation before you go forward. Which informal consultations? The initial one. The one that was done without the Fish and Wildlife Service looking at any monitoring or anything else. Based on the assumptions. On the assumptions. And then, Judge Solomon, you had the second one, which actually followed the usual procedure, and I think is interesting to note here, where they sent the Fish and Wildlife Service all this stuff. And the Fish and Wildlife Service looked at that as well as, I think it's important to note, some things that were not considered initially that had to do with some dams and sediment movement and the fact that the allotment, they had changed the allotment plan. So because you can get a new consultation that has the same outcome, but it's still required as a matter of procedure, because if you don't have the Fish and Wildlife Service in there exercising their expert judgment. Wait a second. You're not asking us, are you, to declare that the opinion would have to change if there is a breach of the monitoring. All you're saying is that they have to reinitiate consultation, which in fact occurred here. So the outcome with regard to Water Canyon through 2004 remains the same. The outcome, yes, it can remain the same, but the issue whether consultation, whether that procedural requirement, which is critical, has to be honored, that remains a live issue because that can come up. For future monitoring of Water Canyon and all the other allotments. And all the others, there are hundreds under this guidance criteria scheme. Now, the counsel said that you only appealed one and there were about nine where there were similar problems. Yes, Judge. What is the rule for them? We originally were looking at something like 30 allotments, and out of those there were, again, a number where they reinitiated consultation voluntarily without conceding anything. There were some where they made additional monitoring information available that showed they were in substantial compliance, and then there was the group that actually went to judgment with the judge. That's right. Were there others where they ruled for the Forest Service, the judge ruled for the Forest Service, on a similar question and you didn't appeal? Is that right? There were others where the judge ruled for the Forest Service on a similar question and we did not appeal those. Each one had its own set of facts that were... Well, if we declare that the failure to comply is an automatic trigger, how do we have the technical competence to decide that? I mean, it seems to me I have to know a whole lot more about wildlife biology before I can... I think that's an excellent question, Judge, and I think the answer in this particular allotment, and that's the reason this one came up, is that here there was a pretty darn wholesale failure of monitoring. This allotment had four or five pastures being used in any given year out of a 10-square-mile allotment, and, for example, in 2001 you had one and maybe two of those pastures that were being used that had some monitoring. It's like saying that you could monitor at Golden Gate Park and it would be valid for the Presidio. It's just not there. I think I have the competency to do. Right. I think a lay judge could probably understand that, but I think you're asking us to do more than that. I think you're asking us to put ourselves in the shoes of the wildlife biologists and decide that this monitoring is so critical that one failure to send somebody out mid-season to Water Canyon must have a significant enough impact on the habitat that a reconsultation is required. No, Judge, I do not think that's required, and I think if we were talking about a single failure to make an observation or several failures to make an observation, that would be one thing. What we're talking about here is a level that's so low that it just doesn't give any information, and I don't think there's a need to go beyond that to say that any violation. But Fish and Wildlife didn't so conclude after looking at the history of monitoring on this allotment, did they? They did not, but they also looked at other factors, and the fact that they came to the same conclusion after the reinitiation occurred doesn't imply that the failure to monitor at this level would not be something that in many situations would require a different outcome. No, we don't have any information before us about this reinitiation that occurred after the appeal was filed. Just that it occurred. Right. And so. All right. Thank you, counsel. Thank you, Judge. The case that's argued will be submitted.
judges: Reinhardt, Paez, Tallman